# HALL'S SAFE COMPANY *v.* HERRING-HALL-MARVIN SAFE COMPANY. (1)

---

STATUTES; PROVISOS; NOTARIES PUBLIC; TRADEMARKS.

1. In enacting a statute primarily to amend the Code of the District of Columbia, Congress may extend the operations of one of the sections or provisions of the Code beyond the locality primarily legislated for, *although it should not be so extended in its operations if by proper construction that result may be avoided.*

2. Congress is not under the limitation that prevails in many of the States, that an act shall embrace but one object which shall be expressed in its title.

3. Notwithstanding the fact that a paper or instrument of whatsoever kind, intended for presentation to an Executive Department in Washington for action, may be prepared by an attorney in a State and

verified by an officer qualified to administer oaths in that State, it is of no effect until presented; all of the proceedings relating thereto being conducted in the Department, and the actual practice being in the District of Columbia.

4. While it is the function of a proviso of a Statute to make an exception from the enacting clause, to restrain generality and prevent misinterpretation, in view of the constant and different use of a proviso in congressional legislation, this restriction of its office no longer maintains, in its strictness.

5. Under sec. 558, D. C. Code (31 Stat. at L. 1279, chap. 854), which, after giving the President power to appoint notaries public in the District of Columbia, by its first proviso permits such notaries to practice before the Executive Departments, and by its second proviso states that "no notary public" shall act in his official capacity "in connection with any matter in which he is employed as attorney before any such Department," a notary appointed in one of the States is not authorized to certify in his official capacity to an instrument filed by him in one of the Departments as attorney for the party to whom he has administered the oath; and, when such an instrument is an opposition to an application for registration of a trademark, a demurrer thereto on such ground will be sustained and the opposition dismissed.

6. Where an opposition to registration of a trademark, filed within the thirty days allowed, is not properly verified by the person filing it, and an instrument, entitled an amendment, which is practically a new application, properly verified, is filed after the expiration of such period, it is filed too late. (Construing the act of Congress of March 2, 1907 [34 Stat. at L. 1251, chap. 2573], amending secs. 5 and 6 of the trademark act of 1905 [33 Stat at L. 725, 726, chap. 592, U. S. Comp. Stat. Supp. 1907, p. 1010, 1011].

7. *Quære,* whether an opposer to an application for registration of a trademark, who has failed to properly verify his opposition filed within the thirty days allowed him, may be given leave by the Commissioners of Patents, after the expiration of that time, to make a proper affidavit to his original opposition.

No. 482.  Patent Appeals.  Submitted May 12, 1908.  Decided June 2, 1908.

HEARING on an appeal from an order of the Commissioner of Patents sustaining a demurrer to and dismissing an opposition to an application for registration of a trademark.

*Affirmed.*

The Court in the opinion stated the facts as follows:

On February 14, 1906, the appellee, the Herring-Hall-Marvin Safe Company, filed an application for the registration of "Hall's Standard Safe," as its trademark, which was passed to publication. On August 6, 1906, A. F. Herbsleb, as attorney for the appellant, the Hall's Safe Company, forwarded a notice of opposition, which was received and filed August 8, 1906, in the Patent Office, which was two days before the expiration of the thirty days allowed for opposition to a published trademark. This opposition denies that the words applied for constitute a registrable trademark under the terms of the law, alleges that it is descriptive merely, that it has not been used by the applicant, that, if used at all, it has not been so used exclusively for ten years prior to the act of February 20, 1905; and that the appellee is entitled to build the Hall Standard Safe, and would sustain irreparable damage by the use of the same by appellee, etc., etc. This opposition was signed thus: The Hall's Safe Company, by W. H. Hall, Treasurer; and was sworn to by said Hall, August 6, 1906, before A. F. Herbsleb, notary public in and for Hamilton county, Ohio, who certified thereto under seal. The opposition was accompanied by a copy of a resolution of the board of directors of said company, authorizing the opposition, and authorizing said Hall to execute and verify the same. On August 30, 1906, the Examiner of Interferences notified the appellant to show cause, on or before September 18, 1906, why its opposition should not be dismissed because the certificate thereof had been before a notary who had been retained as counsel in its prosecution. On September 17, 1906, the appellant filed an amendment referring to the original, and adding two grounds of opposition substantially similar to others formally assigned. This was verified by said Hall before Julius H. Quasser, notary public of Hamilton county, Ohio, and accompanied by official proof of the fact that said Quasser was a notary public of said county, together with a copy of a resolution of the directors of appellee authorizing the said amendment and its verification by said Hall. Notice

was then given to the appellee to plead, demur to, or answer said opposition on or before October 18, 1906. The appellee demurred to the opposition setting up first that the opposition is without proper basis; second, that the original notice is fatally defective because not executed before an officer authorized to administer the oath; third, that the amended notice was filed after the period prescribed by law, namely, thirty days; fourth, that the opponent has admitted that the applicant is the owner of the trademark sought to be registered; fifth, that opponent is estopped to urge opposition by reason of a decision of the circuit court of appeals for the sixth circuit in the case of *Hall's Safe Co.* v. *Herring-Hall-Marvin Safe Co.,* 14 L.R.A. (N.S.) 1182, 76 C. C. A. 495, 146 Fed. Rep. 37; sixth, that, upon the face of the papers, said opponent is without standing to oppose the registration.

The objection to the original opposition, as verified before Herbsleb, as notary public, was founded on sec. 558, D. C. Code [31 Stat. at L. 1279, chap. 854, 34 Stat. at L. 622, chap. 3616], which reads as follows:

"Sec. 558. Notaries.—The President shall also have power to appoint such number of notaries public, residents of said District, as, in his discretion, the business of the District may require. *Provided,* that the appointment of any person as such notary public, or the acceptance of his commission as such, or the performance of the duties thereunder, shall not disqualify or prevent such person from representing clients before any of the Departments of the United States government in the District of Columbia or elsewhere, provided such person so appointed as a notary public who appears to practise or represent clients before any such Department is not otherwise engaged in government employ, and shall be admitted by the heads of such Departments to practise therein in accordance with the rules and regulations prescribed for other persons or attorneys who are admitted to practise therein: *And provided, further,* that no notary public shall be authorized to take acknowledgments, administer oaths, certify papers, or perform any official acts in connection with matters in which he is em-

ployed as counsel, attorney, or agent, or in which he may be in any way interested before any of the Departments aforesaid."

The demurrer was overruled by the Examiner of Interferences, who founded his action on an opinion given by the Assistant Attorney General for the Department of the Interior, to the effect that the proviso of the foregoing section applied only to notaries appointed in and for the District of Columbia. This decision was suspended pending an application to the commissioner for reconsideration, and again came before the Examiner of Interferences on a motion to dismiss the opposition on the grounds alleged. In the meantime, the Attorney General, on application of the Secretary for an opinion as to the effect of sec. 558, had advised him to the effect that the same had application to all notaries however appointed. The motion was sustained, and the opposition dismissed. On appeal to the commissioner, this decision was affirmed, and from his decision this appeal has been prosecuted.

*Mr. A. F. Herbsleb* for the appellant.

*Mr. Horace A. Dodge* and *Mr. William W. Dodge* for the appellee.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

It clearly appears from the record that A. F. Herbsleb was the attorney for the appellant for the preparation and prosecution of the opposition, and that as a notary public in and for Hamilton county, Ohio, where the appellant resided, he certified to the oath made by its treasurer, Hall. We agree with the commissioner that the proviso of sec. 558 is not confined in its application to notaries public of the District of Columbia. Its language is that "no notary" shall be authorized to take acknowledgments, administer oaths, certify papers, or perform any official acts in connection with matters in which he is em-

ployed as counsel, attorney, or agent, or in which he may be in any way interested before any of the Departments of the United States government.   Considered as an independent provision, its meaning plainly is that no notary, whatsoever shall act as such in matters wherein he is of counsel or in any way interested.   It drops the word "such" which precedes the word "notary" in the preceding proviso, making it applicable only to notaries of the District of Columbia, and substitutes the word "no" therefor.   The act of June 29, 1906, when introduced, purported to amend sec. 558 of the Code by making it read differently thereafter; this last proviso was inserted therein before passage.

There can be no doubt that, in enacting a statute primarily to amend the Code for the District of Columbia, Congress may extend the operation of one of its sections or provisions beyond the locality primarily legislated for; but it is a sound proposition that it should not be so extended in its operation if by proper construction that result may be avoided.   Congress is not under the limitation that prevails in many of the States, that an act shall embrace but one object, which shall be expressed in its title.   It has been a frequent practice to introduce new matter into an act, before final passage, that has no connection with the subject-matter of the original bill, or that may expand its particular purpose into others of a general nature.   Some of the most important general legislation has often been enacted in the form of a proviso to appropriation bills.   The object of this act when introduced, as shown in the first proviso, was to remove a disability of notaries public of the District, which did not apply to others, thereby enabling them to practice before the Departments.   As the report of the committee, to whom the bill was committed after introduction, shows, there was a decided opposition on the part of the Secretary of the Treasury, the Secretary of the Interior, and the Comptroller, to permitting notaries to act as such in matters wherein they might also be engaged as attorneys, because, as expressed by two of them, it would "open the doors to fraud and deceit."   Obviously this objection applies as strongly to

notaries without, as to notaries within, the District of Columbia. With this correspondence before it, the proviso under consideration was reported as an amendment by the Senate committee, and was adopted by both Houses without further amendment.

It is to be borne in mind that the Departments of the government are located in the District of Columbia. Notwithstanding the fact that a paper, or instrument of whatsoever nature intended for presentation to a Department for action, may be prepared by an attorney in any State, and verified by an officer qualified to administer oaths in the same, it has no effect until presented. All proceedings relating thereto are conducted in the Department and under its supervision. The actual practice is in the District of Columbia. In view of the powers and practice of Congress before mentioned, it was not unnatural, therefore, that a proviso having in contemplation other notaries than those in the District of Columbia, practising before the Departments, should be incorporated into an act admitting the latter to practise before the Departments, thereby putting all under one general limitation.

Against a. construction that would embrace all notaries, it is argued that it is the function of a proviso to restrain or modify what precedes it merely, that is to say, to make an exception from the enacting clause, to restrain generality, and prevent misinterpretation. In view of the constant different use of the proviso in congressional legislation, this restriction of its office no longer maintains in its strictness. As was said in *Georgia R. & Bkg. Co.* v. *Smith,* 128 U. S. 174, 181, 32 L. ed. 377, 380, 9 Sup. Ct. Rep. 47: "The general purpose of a proviso, as is well known, is to except the clause covered by it from the general provisions of a statute, or from some provisions of it, or to qualify the operation of the statute in some particular. It is a common practice in legislative proceedings, on the consideration of bills, for parties desirous of securing amendments to them, to precede their proposed amendments with the term 'provided' so as to declare that, notwithstanding existing provisions, the one thus expressed is to prevail, thus having no greater

signification than would be attached to the conjunction 'but' or 'and' in the same place, and simply serving to separate or distinguish the different paragraphs or sentences."

In the latest expression of the same court on this subject, in reply to a similar argument to that here made, it was said: "It is apparent that this proviso was not inserted in any restrictive sense, or to make clear that which might be doubtful from the general language used. It was inserted for the purpose of enlarging the operation of the statute so as to include a class of cases not otherwise within the operation of the section. It may be admitted that this use of a proviso is not in accord with the technical meaning of the term, or the office of such part of a statute when properly used. But it is nevertheless a frequent use of the proviso in Federal legislation to introduce, as in the present case, new matter extending, rather than limiting or explaining, that which has gone before. * * * The provision in the statute under consideration being intended to enlarge, rather than limit, the application of previous terms, should not receive so narrow a construction as to defeat its purpose." *Interstate Commerce Commission* v. *Baird,* 194 U. S. 25, 37, 48 L. ed. 860, 866, 24 Sup. Ct. Rep. 563.

Another question arises on the effect of the act approved March 2, 1907, amending secs. 5 and 6 of the trademark act of 1905. Section 6 of the last-mentioned act required the opposition to the registration of a trademark to be verified by the person filing the same. It could not be verified by another for him. *Martin* v. *Martin & B. Co.* 27 App. D. C. 59, 62. As it sometimes happened that illness or absence of the opposer rendered it impossible for him to make the required verification within the thirty days required by the act, the amendatory act of 1907 undertook to remedy this hardship by providing that an opposition may be filed in the name of an opponent by his duly authorized attorney within the time, but the same shall be null and void unless verified by the opposer within a reasonable time thereafter.

When the objection was raised in the office that the attempted verification was invalid because made before, and certified to

by, a notary who was at the same time the attorney of the opponent for the prosecution of the opposition, no leave was applied for to cure the defect by verifying it before a qualified notary. The action taken was to file a new opposition, entitled an amendment, which was signed by the same authorized representative officer of the corporation, and verified before a proper notary. This was practically a new opposition, and as such came too late. It is unnecessary to consider whether the amendatory act, subsequetly passed, can be given a retroactive effect, for the reason that, if so declared, it fails to apply to the conditions of this case. The mischief sought to be remedied was, as heretofore pointed out: An opposition might be filed in the name of a party by his attorney, the verification of which by the party, himself, could not be obtained within the thirty days, and he was permitted to make it within a reasonable time thereafter. The statute was not intended to apply to a case where the opposer was able and ready to verify, but failed to do so in the manner provided by law. By what has been said regarding the failure of the opposer to ask leave to make a proper affidavit to his original opposition as a substitute for the one attempted to be made thereto, we are not to be understood as holding that this could have been done. The question is not presented in this case, and remains an open one for the decision of the Commissioner of Patents, in the first instance, when it may be presented.

The decision will be affirmed. It is so ordered, and that this decision be certified to the Commissioner of Patents.

*Affirmed.*